## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

JOSEPH (JOEY) LUZIER, III,

      Plaintiff,

v.                                            Case No. 5:25-cv-37-MW-MJF

SERGEANT JOHN R. RUNYON,
And OFFICER SARAH K. SHIVER,

      Defendants.

_____/

## DEFENDANT'S MOTION TO DISMISS

John R. Runyon ("Defendant"), through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b), requests this Court to dismiss Plaintiff's Complaint (ECF No. 1) because Plaintiff failed to properly exhaust available administrative remedies. Should this Court find that Plaintiff properly exhausted administrative remedies, Defendant, pursuant to Fed. Civ. P. 12(f), requests this Court to Strike Plaintiff's request for punitive damages as they are barred by 18 U.S.C. §3626(a)(1)(A).

## SUPPORTING MEMORANDUM

### PROCEDURAL HISTORY AND ALLEGATIONS

Plaintiff, Joseph (Joey) Luzier III, DC# E24178, is a prisoner in the custody of the Florida Department of Corrections ("FDC"). Plaintiff initiated this action on

February 20, 2025, with the filing of the operative complaint. ECF No.1. Plaintiff asserts a claim of failure to protect in violation of the Eighth Amendment against Defendants. ECF No. 1 ¶15.

In early 2022, Plaintiff was transferred to Apalachee Correctional Institution. *Id* ¶8. Plaintiff claims to have been targeted and threatened by the prisoner Collies Robinson ("Robinson") and his "gang 'brothers'" in R dorm due to Plaintiff's gender identity and sex offenses. *Id* ¶9-10. Robinson told Defendant that Plaintiff "had to go" and needed to be removed or else they would attack Plaintiff. *Id* ¶10-11. Plaintiff requested to "check in" (generally refers to requesting confinement pending further investigation) with Runyon due to the threats of violence by Robinson and others against Plaintiff. *Id* ¶12. Runyon purportedly told Plaintiff to "man up and accept what's coming to you" and refused to do anything until something happened to Plaintiff. *Id.* A few days later, on February 2, 2022, Plaintiff was stabbed in the face, shoulder, and neck by Robinson. *Id* ¶13.

Plaintiff seeks nominal, compensatory, and punitive damages, as well as reasonable attorneys' fees and costs, and such other just and proper relief. ECF No. 1 at 5-6.

## **ARGUMENT**

## Motion to Dismiss Standard

"[T]o survive a motion to dismiss, a complaint must contain sufficient

matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007). The plausibility requirement requires more than the possibility a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. A complaint that merely pleads facts consistent with liability does not meet the plausibility standard. *Iqbal*, 556 U.S. at 678. To meet the plausibility standard, facts must raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. Federal pleading rules require a complaint to provide sufficient notice to a defendant regarding the causal connection between him and the plaintiff's claim. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

Conclusory factual allegations, unwarranted deductions, claims that are internally inconsistent or can be disproven by facts of which the court can take judicial notice, and legal conclusions are not accepted as true for the purposes of a motion to dismiss. *Ellen S. v. Fla. Bd. of Bar Examiners*, 859 F. Supp. 1489, 1492 (S.D. Fla. 1994) (citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. 678 (quoting *Twombly*, 550

U.S. at 555, 557). While *pro se* litigants are entitled to the benefit of having their pleadings liberally construed, a court cannot "act as de facto counsel for a party" or "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F. 3d 1359, 1369 (11th Cir. 1998) (overruled on other grounds by *Iqbal*).

## I.    Plaintiff failed to properly exhaust available administrative remedies.

Plaintiff failed to properly exhaust available administrative remedies against Defendant Runyon. Accordingly, the claims against Defendant must be dismissed. Pursuant to 42 U.S.C. § 1997e(a),

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This requirement is mandatory. *Alexander v. Hawk*, 159 F.3d 1321, 1323 (11th Cir.1998); *Harper v. Jenkin*, 179 F.3d 1311 (11th Cir.1999). Section § 1997e(a) requires the plaintiff to exhaust any available administrative remedy *before* he files suit. *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (unreported op.); *Cox v. Mayer*, 332 F.3d 422, 425 (6th Cir. 2006).[1] In *Porter v. Nussle*, 534 U.S. 516, 532,

---

[1] The Sixth Circuit in *Cox* cited to *Harris v. Garner*, 216 F.3d 970, 973-80 (11th Cir. 2000) (en banc), "[f]or an extended explanation of why 'to bring' means 'to file,'" where the Eleventh Circuit construed the same language ("brought") in the physical injury section of § 1997e to mean "file." *Cox*, 332 F.3d at 424 n.1.

122 S. Ct. 983 (2002), the United States Supreme Court held that 42 U.S.C. §1997e(a) applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *Booth v. Churner*, 532 U.S. 731, 734, (2001); *Alexander*, 159 F.3d at 1325. The requirement is not subject to either waiver by a court, or futility or inadequacy exceptions. *Alexander*, 159 F.3d at 1325; *see Booth*, 532 U.S. at 741 n.6.

Additionally, 42 U.S.C. § 1997e(a) requires a prisoner to provide in his administrative grievance as much relevant information about his claims, including the identity of those directly involved in the alleged deprivations, as the prisoner reasonably can provide. *Brown v. Sikes*, 212 F.3d 1205, 1210 (11th Cir. 2000).

"The [Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e,] exhaustion requirement requires full and proper exhaustion." *See Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378 (2006). Exhaustion is a <u>mandatory</u> pre-condition to filing a suit. *Woodford*, 548 U.S. at 85. Completion of the exhaustion requirement means properly completing each step of the prison's grievance procedures. *Jones v. Bock*, 549 U.S. 199, 219, 127 S. Ct. 910 (2007); *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005); *Zolicoffer v. Scott*, 55 F. Supp. 2d 1372, 1375 (N.D. Ga. 1999) ("The exhaustion requirement mandates a good faith,

bona fide effort to comply with [the grievance] procedures for obtaining an administrative remedy."), *affirmed*, 252 F.3d 440 (11th Cir. 2001).

The Eleventh Circuit Court of Appeal has noted that the policy reasons underlying the requirement of exhaustion are:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

*Alexander*, 159 F.3d at 1327 (quoting *Kobleur v. Group Hospitalization & Medical Services, Inc.*, 954 F.2d 705, 712 (11th Cir. 1992)). The Eleventh Circuit has also stated that the purpose of exhaustion "is to put the [administrative authority] on notice of <u>all issues</u> in contention and to allow the [authority] an opportunity to investigate those issues." *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (citations omitted). The purpose of filing administrative grievances, as defined by the FDC inmate grievance procedure,

> . . . is to provide an inmate with a channel for the administrative settlement of a grievance. In addition to providing the inmate with the opportunity of having a grievance heard and considered, this procedure will assist the department by providing additional means for internal resolution of problems and improving lines of

> communication. This procedure will also provide a written record in
> the event of subsequent judicial or administrative review.

Rule 33-103.001(1), Fla. Admin. Code. "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's procedural rules." *Woodford*, 548 U.S. at 95. "Allowing plaintiff to proceed on his unexhausted claim would frustrate the policies behind the mandatory PLRA exhaustion requirement." *Shields v. Paeplow*, No. 09-21818-Civ-SEITZ, 2010 WL 5419002, at *7 (S.D. Fla. Nov. 16, 2010) (report and recommendation ("R&R") citing *Woodford*, 548 U.S. at 87-94), 2010 WL 5419081 (Dec. 23, 2010) (unpublished order adopting R&R) (emphasis added).

According to precedent, all claims must be exhausted prior to filing a lawsuit. *See Jones*, 549 U.S. at 219-24. The district court is tasked with separating the exhausted claims from the unexhausted claims, dismissing the unexhausted claims, and proceeding forward on only the exhausted claims. *Id.*

The FDC has established a grievance procedure in the Florida Administrative Code, §§ 33-103.001 to 33-103.019. *Chandler*, 379 F.3d at 1288. Generally, to properly exhaust administrative remedies prisoners must complete a three-step process starting with an informal grievance on a DC6-236 form, followed by a formal grievance on a DC1-303 form, and completed by the

submission of a grievance appeal on DC1-303 form. *See* Rules 33-103.005-.007, Fla. Admin. Code. The informal and formal grievances are institutional grievances, meaning they are filed at the prison the prisoner is housed at for a response by a prison staff member. *Id.*; *Chandler*, 379 F.3d at 1287-88. Exhaustion requires that all steps within the grievance process be completed before filing suit, including waiting for a response to the grievance appeal before initiating the judicial action. *See*, e.g.*, Smith*, 491 F. App'x at 82-83 (stating that, to complete the exhaustion requirement, the inmate was required to wait for the grievance appeal response or for the requisite appeal response time to expire before filing his § 1983 action).

If a grievance appeal is approved for further investigation and the inmate is issued a corrected formal grievance response, an inmate has <u>not</u> exhausted all of his available administrative remedies at that point. Specifically, Rule 33-103.007(7), Fla. Admin. Code., states, "[i[f the grievance is returned to the institution or facility or privatization commission for further investigation or response, the inmate may, following receipt of that response, re-file with the Office of the Secretary pursuant to Rule 33-103.007, Fla. Admin. Code., if he is not satisfied with the response." Therefore, an inmate has an additional exhaustion opportunity available to him, where he may re-file an appeal of that amended response to the Office of the Secretary if he is unsatisfied with that new response

and needs to do so in order to fully exhaust his available administrative remedies prior to bringing suit. See Rule 33-103.007(7), Fla. Admin. Code.

In *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008), the Eleventh Circuit held that "a defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." *Id.* at 1082 (citing *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008) (holding that "instances exist-such as those involving jurisdictional issues when judges may resolve factual questions. One such instance is when a judge must decide a motion to dismiss for failure to exhaust nonjudicial remedies.")). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense … is not ordinarily the proper subject for a summary judgment; instead, it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'" *Bryant*, 530 F.3d at 1374-1375 (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.d 365, 368-69 (9th Cir. 1988)). According to *Bryant*:

> Where exhaustion-like jurisdiction, venue, and service of process-is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.

*Bryant*, 530 F.3d at 1376.

The Court further held that deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed… If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.
>
> *Id.* (internal citations omitted).

<u>Analysis</u>

In this case, Plaintiff has failed to exhaust Plaintiff's administrative remedies as it relates to claims brought against Defendant. Prior to filing suit, Plaintiff submitted various grievances that make reference to the February 2, 2022, stabbing and generalized need for improved security measures after the stabbing but did not exhaust the claim raised in the Complaint: that two officers failed to act after being told by Plaintiff and/or other prisoners that Luzier was threatened with violence that potentially warranted protective actions. *See* Defendants' Exhibit A and B, and ECF No. 1 ¶ 17. Discussed below is analysis of the most relevant grievances, though none are exhaustive of Plaintiff's claims.

<u>Informal Grievances</u>

On August 6, 2024, Plaintiff submitted an informal grievance, log # 215-2408-0045, grieving that Plaintiff was stabbed on February 2, 2022, and that FDC officials knew there was a "blind spot" where the stabbing took place, that stabbing have occurred there before, and that they need to implement more robust security measures. (Defendant's Exhibit A at 1  ¶3 and at 24-25). On August 6, 2024, Plaintiff's informal grievance was returned without action pursuant to Chapter 33-103.014(1)(4) because it was filed in excess of 20 days from the time of the event being grieved. *Id.*

On November 1, 2022, Plaintiff submitted an informal grievance, log # 251-2211-0009, grieving that Plaintiff was being targeted, that the FDC has a duty to protect Plaintiff's safety, and that Luzier's information on FDC's website should be removed from public viewing. (Defendant's Exhibit A at 1  ¶3 and at 26). Plaintiff's informal grievance was returned without action because part of the relief sought could not be handled at the institutional level and, pursuant to Chapter 33-103.014(1)(9), because it grieved more than one issue. *Id.*

Formal Grievances

On February 7, 2022, Plaintiff filed an emergency formal grievance, log number 2202-103-024, stating that Plaintiff was stabbed on February 2, 2022, due to understaffing at Apalachee Correctional Institution – East, and requested to be transferred to a protective management unit. (Defendant's Exhibit A at 1 ¶ 5 at 35-

36). The institution returned Plaintiff's formal grievance without action on February 9, 2022, due to non-compliance with Chapter 33-103 because it was not accepted as a grievance of an emergency nature and stated that Luzier needed to re-file not labeled as an emergency. *Id.*

On February 10, 2022, Plaintiff filed a formal grievance, log number 2202-102-040, stating that Plaintiff was stabbed on February 2, 2022, due to the severe staff shortage and lack of proper security at Apalachee Correctional Institution. (Defendant's Exhibit A at 1 ¶ 6 at 37-38). Luzier requested to be transferred to a protective management unit, to be evaluated by mental health, for the FDC to cover all medical expenses associated with the stabbing, and to install additional security cameras and metal detectors. *Id.* The institution denied Plaintiff's formal grievance on February 21, 2022, stating: that the incident had already been appropriately reported to the Office of the Inspector General, that the security camera placement was approved by the Department of Justice, that a hearing with ICT would take place regarding Luzier's protection needs, that the sick call process may be utilized regarding the mental health request, and that Luzier did not have a right to request where cameras are placed. *Id.*

On February 14, 2022, Plaintiff filed a formal grievance, log number 2202-102-065, stating that, pursuant to Ch 33-602.220(3)(c), protective management process, including ICT's action, shall be completed within 15 days, and it had

already been 9 working days without having been interviewed. (Defendant's Exhibit A at 1 ¶ 7 at 39-40). The institution retuned Plaintiff's formal grievance without processing on February 21, 2022, for non-compliance per Chapter 33-103.014(1) because Luzier did not provide a valid reason for bypassing the previous levels of review as required or the reason provided was not acceptable. *Id.* Luzier was advised that a grievance of this matter must be initiated at the informal grievance level before appealing to the formal grievance level and there was no indication that had been done at the time the formal grievance was received. *Id.*

On August 22, 2024, Plaintiff filed a formal grievance, log number 2408-215-168 (appealing informal grievance log # 215-2408-0045), stating that Luzier was stabbed on February 2, 2022, due to blind spots of the surveillance cameras, inadequate staffing, no metal detectors, and failure to properly supervise inmates. (Defendant's Exhibit A at 1 ¶ 8 at 41-43). Luzier requested the grievance be referred to the Inspector General for criminal charges against C. Robinson for the stabbing, for a special review between Luzier and Robinson, to speak with a Inspector General, and that the grievance be approved. *Id* at 41. The institution retuned Plaintiff's formal grievance without action on August 23, 2024, for non-compliance per Chapter 33-103.014(1)(e) because the formal grievance was not received within 15 calendar days of the date on which the incident or action being complained about occurred. *Id* at 43.

Grievance Appeals

On February 14, 2022, Plaintiff filed a grievance appeal, log number 22-6-04652, with the Department's Office of the Secretary where raising concerns regarding the jail breaking of tablets within the the FDC and the security risks it creates. (Defendant's Exhibit B at 1 ¶ 4 at 7-9). Luzier requested: to be sent to a protective management unit, be permitted to transfer to a prison in Ohio or Pennsylvania, to be free of any/all forms of retaliation for filing the grievance, that all tablets statewide be seized immediately to eliminate the problem of inmate being capable of having unauthorized access to the internet and restrict email capacities to stationary kiosks, that a "loaner" MP4 program be impalement for inmates to purchase music and movies being MP4's are not internet accessible, and that the grievance be approved. *Id* at 7-8. On February 18, 2022, the Department's Office of the Secretary returned Luzier's appeal without action stating that the request for protective management was already under review at the intuitional level and, upon State Classification Office's final decision, if the request was denied, Luzier would have the opportunity to directly appeal that decision within 15 days of the State Classification Office's decision. Additionally, it stated that Luzier's issue regarding J-Pay tablet, a loaner, MP4 program, and transfer to a different prison in Ohio or Pennsylvania are separate issues and should be grieved as such and be initiated at the appropriate level. *Id* at 9.

On February 28, 2022, Plaintiff filed a grievance appeal, log number 22-6-05982, (appealing formal grievance log # 2202-102-040) with the Department's Office of the Secretary grieving the institution's failure to address the shortage of staff, lack of proper metal detectors, and proper safety and security measures not being enforced. (Defendant's Exhibit B at 2 ¶ 5 at 10-14). Luzier requested: a response directly from Secretary Ricky Dixon regarding the matter, any/all relief for permanent damage done, for this matter to be addressed and the issues be corrected to prevent this issue for continuing at Apalachee C.I., a response to this appeal acknowledging the Luzier was stabbed on February 2, 2022, while walking in the designated walker area from the chow hall to R-dorm, and that the grievance be approved. *Id* at 10. On March 9, 2022, the Department's Office of the Secretary denied Luzier's appeal stating that the response Luzier received at the institutional level was found to appropriately address the concerns raised at the institutional level, as well as the Central Office level. *Id* at 14.

On September 5, 2024, Plaintiff filed a grievance appeal, log number 24-6-27477, (appealing formal grievance log # 2408-215-168) with the Department's Office of the Secretary grieving being stabbed on February 2, 2022, due to lack of staff, no metal detectors, and that the area Luzier was stabbed at was a "notorious blind spot to cameras." (Defendant's Exhibit B at 2 ¶ 6 at 15-20). Luzier requested: criminal charges against inmate C. Robinson for the stabbing, investigation by the

Inspector General, special review against Luzier and C. Robinson, and that the grievance be approved. *Id* at 15. On September 20, 2024, the Department's Office of the Secretary returned Luzier's appeal without action citing non-compliance with Chapter 33-103 because the grievance at the institutional level was determined to be in non-compliance with the requirements of the rule. *Id* at 20.

None of the grievances Plaintiff filed are sufficient to have placed the department on notice that two officers failed to act after being told by Plaintiff and/or other prisoners that Luzier was threatened with violence that potentially warranted protective actions. Instead, Plaintiff filed various grievances about insufficient staffing, camera placement, security deficiencies with the tablets, and other security concerns that are not raised in the Complaint.

At this point, Plaintiff's deficiency with this case <u>cannot be cured by filing an amended complaint</u> because the amendment cannot "change the important historical fact: his administrative remedies were unexhausted when he filed his original complaint." *Smith*, 491 F. App'x at 83. Accordingly, Luzier's Complaint must be dismissed for failure to exhaust Plaintiff's administrative remedies.

## II.    Plaintiff's request for punitive damages must be struck.

Punitive damages are statutorily barred by 18 U.S.C. §3626(a)(1)(A) and should be struck pursuant to Fed. R. Civ. P. 12(f). "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to

correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. §3626(a)(1)(A). Moreover, to grant prospective relief, the Court must "fin[d] that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* Furthermore, the Court must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.*

Section 3626(a)(1)(A) applies to punitive damages because "prospective relief" is defined under the statute as "all relief other than compensatory monetary damages." 18 U.S.C. §3626(g)(7); *see also Johnson v. Breeden*, 280 F.3d 1308, 1325 (11th Cir. 2002) (finding that the plain language of the definition provision is clear and that "punitive damages are prospective relief").

As a categorical matter, punitive damages cannot satisfy the strict requirements of section 3626(a)(1)(A). First, punitive damages are never necessary to correct a violation of a Federal right. This is because "correction" of violation is accomplished through compensatory damages and punitive damages are, by their nature, never corrective.

> Although compensatory damages and punitive damages are typically awarded at the same time by the same decisionmaker, they serve distinct purposes. The former are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct. The latter, which have been described as "quasi-criminal," operate as "private fines" intended to punish the defendant and to

deter future wrongdoing. A jury's assessment of the extent of a plaintiff's injury is essentially a factual determination, whereas its imposition of punitive damages is an expression of its moral condemnation.

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001) (cleaned up).

Second, even if an award of punitive damages could be thought reasonably "necessary" to correct a legal violation, such an award could not satisfy the additional, stringent limitations imposed by the PLRA—i.e., the requirements that the relief be "narrowly drawn," "extend[] no further than necessary to correct the violation of the Federal right," and be "the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. §3626(a)(1)(A) (emphases added); *see United States v. Whyte*, 928 F.3d 1317, 1328 (11th Cir. 2019) (explaining that it is a "cardinal rule" of statutory interpretation that courts try to give "effect… to every clause… of a statute") (citation and internal quotation marks omitted)). Even if deterring future violations is conceptualized as one way of correcting a violation, punitive damages are never the "narrow[est]" or "least intrusive" way of effectuating such a correction. As the Supreme Court has explained, "[d]eterrence is… an important purpose of" the tort system created by section 1983, but such deterrence primarily "operates through the mechanism of damages that are compensatory—damages grounded in determinations of plaintiffs' actual losses." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307

(1986) (emphasis in original). Similarly, the Supreme Court has made "clear" that "nominal damages," not punitive damages, "are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury." *Id.* at 308 n.11. Even assuming punitive damages are also an "appropriate" means of vindicating such rights, they are not less burdensome, more narrowly tailored, or less intrusive than nominal damages.

Although the Eleventh Circuit held in *Hoever v. Marks*, 993 F.3d 1353, 1364 (11th Cir. 2021), that "[42 U.S.C.] §1997e(e) permits claims for punitive damages without a physical injury requirement," it expressly declined to consider whether section 3626 bars punitive damages. *Id.* at 1364 fn. 5. Because the Court did not consider the argument presented here, <u>Hoever</u> is not controlling on the issue. Moreover, in *Johnson v. Breeden*, 280 F.3d 1308, 1325-26 (11th Cir. 2002), the Eleventh Circuit interpreted section 3626(a)(1)(A) in a manner that indicates that it does not bar punitive damages.[1] However, the argument that section 3626 categorically bars punitive damages was not discussed, let alone rejected, in

---

[1] Specifically, the Court stated that section 3626's requirements "mean that a punitive damages award must be no larger than reasonably necessary <u>to deter</u> the kind of violations of the federal right that occurred in the case. They also mean that such awards should be imposed against no more defendants than necessary to serve <u>that deterrent function</u> and that they are the least intrusive way of doing so." 280 F.3d at 1325 (emphases added). It further stated that "[m]any factors may enter into that determination. For example, the number of… violations an individual defendant or institution has had might affect whether punitive damages were necessary, and if so, the amount required <u>to deter</u> future violations." *Id.* (emphasis added).

*Johnson*. Therefore, *Johnson* is not dispositive on the issue.[2] *See United States v. Mitchell*, 271 U.S. 9, 14 (1926) ("It is not to be thought that a question not raised by counsel or discussed in the opinion of the court has been decided merely because it existed in the record and might have been raised and considered."); *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

The Circuit Courts apparently have yet to directly address whether punitive damages are barred by section 3626. *See, e.g., Hoever*, 993 F.3d at 1364 n.5 ("We decline the government's invitation to address the availability of punitive damages in prison condition cases under 18 U.S.C. § 3626, as it falls outside the scope of the *en banc* briefing question posed to the parties.") (citation omitted); *Al-Amin v. Smith*, 637 F.3d 1192, 1199 n.10 (11th Cir. 2011) ("Since we find that § 1997e(e) prevents Al–Amin, in the absence of physical injury, from offering evidence supporting an award of punitive damages in this action, we need not consider the validity or timeliness of Defendants' alternative argument that 18 U.S.C. § 3626 prohibits punitive damage recovery as well."), *overruled by Hoever*, 993 F.3d at 1363-64; *Vaughn v. Cambria Cnty. Prison*, 709 Fed. Appx. 152, 155 n.2 (3d Cir. 2017) ("The Magistrate Judge stated that punitive damages were

---

[2] To the extent that this Court is bound by *Johnson*, the argument that section 3626 bars punitive damages is presented here to preserve the issue for appellate review.

unavailable under 18 U.S.C. § 3626(a)(1)(A)… We offer no opinion on this issue at this time, and defer consideration of it in this proceeding because liability has not yet been found.") (citation omitted); *Wilkerson v. Stalder*, 329 F.3d 431, 434 n.3 (5th Cir. 2003) ("The district court chose to defer ruling on the prison officials' claim that the Prison Litigation Reform Act bars the inmates' claim for punitive damages until such time as liability is found. Therefore, this issue is not properly before the court on appeal.") (citation omitted). Because of the apparent absence of Circuit precedent directly addressing this argument, Defendants rely on the plain meaning of the text of section 3626.

Punitive damages are never "necessary to correct the violation of" a Federal right because, "[i]n the strictest sense of the term, something is 'necessary' only if it is essential." *Ayestas v. Davis*, 138 S. Ct. 1080, 1093 (2018) (citing Webster's Third New International Dictionary 1510 (1993); 10 Oxford English Dictionary 275–276 (2d ed. 1989)); *see also Necessary*, Black's Law Dictionary (11th ed. 2019) (defining necessary to mean "essential"). And the text and context of section 3626(a) indicate that Congress intended to use the term "necessary" in the strict sense of that word. Unlike the "necessary and proper clause" of Article I, Section 8, for example, section 3626 uses the term "necessary" in the context of a "strict limitation[]," not a broad authorization. *See Johnson*, 280 F.3d at 1323. Similarly, the immediately surrounding text provides that relief is barred unless it is

"narrowly drawn," "extends no further than necessary to correct the violation of the Federal right," and is "the least intrusive means necessary to correct the violation of the Federal right. 18 U.S.C. §3626(a)(1).

Punitive damages, however, are not even an appropriate mechanism for "correcting" a legal violation; to the extent that damages serve a "corrective" function, that is what compensatory damages are for. By definition, "compensatory damages" are "[d]amages <u>sufficient</u> in amount to indemnify the injured person for the loss suffered." *Damages*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Accordingly, punitive damages are not even intended to "correct" a legal violation by making the injured party whole; still less are they an "essential" way of making the plaintiff whole.

Consistent with dictionary definitions, caselaw recognizes that punitive damages awards serve two purposes, "punishing unlawful conduct and deterring its repetition." *State Farm Mut. Auto Ins. Co v. Campbell*, 538 U.S. 408, 416 (2003) (quotation omitted). Neither of those purposes makes punitive damages "necessary to correct" a violation of Federal law. By definition, one may "correct" a violation of law without "penalizing" past misconduct or "deterring" potential future violations. Ordinary English usage confirms that proposition. For example, one does not "correct" a future error before it happens; one seeks to deter it—i.e., to prevent it from happening in the first place. Likewise, punishment is not strictly

necessary to remedy a wrong; instead, punishment serves other goals, like deterrence or retribution. *Cf. Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1642 (2017) (distinguishing between remedies that are penalties, i.e. those that seek to punish, and those that seek to "compensate[e] a victim for his loss").

Moreover, reading section 3626 to categorically bar punitive damages does not prevent the court from fully remediating ongoing violations. In many civil actions with respect to prison conditions, a plaintiff alleges that his federal rights are being violated on an ongoing basis. In those cases, prospective relief may be warranted—for example, in the form of declaratory or injunctive relief that requires prison officials to "correct" their violation by bringing their conduct into conformity with the law. As this Court has explained, albeit in the context of interpreting section 1997e(e), such relief provides a "reasonably adequate opportunity" to seek redress for constitutional violations," even if prisoners "may not recover monetary damages for such claims." *Al-Amin*, 637 F.3d at 1197 (quotation marks and citation omitted).

What is more, to clear the high bar of the PLRA, relief other than compensatory monetary damages must extend "no further than necessary to correct the violation of the Federal right of [the] particular plaintiff or plaintiffs." 18 U.S.C. §3626(a)(1) (emphasis added). Punitive damages awards aimed at protecting inmates generally (e.g., through deterrence), rather than correcting the

violations suffered by the particular plaintiff bringing the suit, are thus prohibited. Moreover, not only must punitive damages awards be plaintiff-specific, they must be defendant-specific. Section 3626(a)(1) requires that they be "narrowly drawn," which means that any deterrent must be aimed at deterring the particular defendant, not the correctional facility or government in general.

Because this Court cannot find that punitive damages are necessary to correct a violation of Plaintiff's rights or are the least intrusive means necessary to do so, punitive damages are barred by section 3626(a)(1)(A). Therefore, Plaintiff's request for punitive damages must be struck.

<u>CONCLUSION</u>

**WHEREFORE**, Defendant requests that this Court dismiss all claims against him in the Complaint. Should this Court find that Plaintiff properly exhausted Luzier's administrative remedies, Defendant, requests this Court to Strike Plaintiff's request for punitive damages.

Respectfully submitted,

**JAMES UTHMEIER**
ATTORNEY GENERAL

*/s/ Brian Fallon*
Brian R. Flynn-Fallon
Assistant Attorney General
Florida Bar No.: 1044316
Office of the Attorney General
Civil Litigation – North Bureau
PL-01, The Capitol

Tallahassee, Florida 32399
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Brian.Fallon@myfloridalegal.com

## CERTIFICATE OF CONFERRAL

Pursuant to 7.1(D) of this Court's Local Rules, conferral with opposing counsel is not required for this Motion.

*/s/ Brian Fallon*
Brian R. Fallon
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

**I HEREBY CERTIFY** that the above Motion contains 5,656 words, which does not exceed the 8,000 total word maximum created by N.D. Fla. Loc. R. 7.1(F).

*/s/ Brian Fallon*
Brian R. Flynn-Fallon
Assistant Attorney General

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendant's Motion to Dismiss* has been electronically filed through the CM/ECF system, which will serve to counsel of record, on May 2, 2025.

*/s/ Brian Fallon*
Brian R. Flynn-Fallon
Assistant Attorney General